IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARLENE GRIEGO, on
behalf of CHARLES L. GRIEGO,

      Plaintiff,

vs.                                                                                            No. Civ. 97-1044 SC/WWD

KENNETH S. APFEL,[1] COMMISSIONER
OF SOCIAL SECURITY,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.   This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed March 2, 1998 [11-1].  The Commissioner denied plaintiff's request for Supplemental Security Income benefits.  Charles Griego, age 9, alleges a disability which commenced August 31, 1994, due to attention deficit hyperactivity disorder ("ADD").

    2.   The Commissioner denied Plaintiff's application for benefits. After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Charles' impairment was not of comparable severity to an impairment that would be expected to disable an adult, thus rendering him not disabled.  The

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J.Callahan, who was the appropriate party at the time of the underlying decision.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Appeals Council denied plaintiff's request for review, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

    3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

    4. Plaintiff alleges that the ALJ erred in not finding Charles' impairment not functionally equivalent to any listed impairment. Specifically, plaintiff contends that the ALJ did not consider the evidence in the record regarding Charles' cognitive functioning and that plaintiff's impairment is equivalent to listing 112.02 for organic mental disorders even under the new standard for child evaluations. 20 C.F.R. Pt.404,Subpt.P, App.1, §112.02.

    5. The statutory standard for evaluating children's disability claims and the accompanying regulations have been changed. Under the new standard, an individual under the age of 18 is considered disabled if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.A. § 1382c(a)(3)(C) (as amended by P.L. 104-193, the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, § 211), (superseding Sullivan v.Zebley, 493 U.S. 521 (1990)).

6. The first three steps in the evaluation process remain the same, involving determinations as to (1) whether the child is engaging in substantial gainful activity, (2) whether the impairment is severe, and (3) whether the impairment meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1. See 20 C.F.R. § 416.924 (1997). The fourth step, which required a determination resulting from an "individualized functional assessment" as to whether a child's impairment was of comparable severity to that which would disable an adult, has been eliminated. Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir.1997).

7. The new regulations implementing the Act reflect this change by providing that if the child's impairment or impairments do not meet, medically equal, or functionally equal in severity a listed impairment, the child is not disabled. See 20 C.F.R. § 416.924(d)(2)(1997). In reviewing the Commissioner's decision, therefore, my concern is not with his findings at step four of the analysis. Instead, I ask only whether his findings concerning the first three steps are supported by substantial evidence. Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997).

8. Section 211(d)(1) of the Act, found in the notes following 42 U.S.C.A. § 1382c, states that the new standard for evaluating children's disability claims applies to all cases which have not been finally adjudicated as of the effective date of the Act, August 22, 1996, including those cases in which a request for judicial review is pending. Brown v. Callahan, 120 F.3d 1133, 1135 (10th Cir. 1997). In this case, the ALJ's decision was issued before the effective date of the new rule, on May 10, 1996. However, because the decision by the Appeals Council was entered on July 11, 1997, which is after the Act's effective date, I must apply the new evaluation standard in reviewing the Commissioner's decision.

9.   I note that plaintiff assumes that the former standard still applies to that part of his claim for the period before August 22, 1996 but he cites no legal authority for this proposition. Mem. at 3.  I have not found any statutory or relevant case law to warrant such piecemeal application of the new standard.  Rather, the Tenth Circuit has applied the new standard to an entire claim where it was determined that the claim was still pending for judicial review after the effective date.  Brown at 135 (citing 42 U.S.C.A § 1382c note); cited in Murray v. Apfel, unpubl. op, 1998 WL 166249, *1 (10th Cir.(Okla.)) (applying new standard to claim where law was changed after ALJ issued his decision and where judicial review was still pending).

10.   As early as kindergarten, Charles had exhibited destructive behaviors such as biting, as well as withdrawal and depressive tendencies which were noticed by his mother and his teachers.  Tr. at 41, 47.  At the hearing, his mother testified that since Charles has been on an adjusted dose of Ritalin and Imipramine, Charles has shown positive changes in learning ability, behavior, grades and ability to stay more on task.  Tr. at 40-42.

11.   Charles also uses a nebulizer and inhalent (Ventalin) for asthma which he has had since 1990.  Tr. at 42-43.  His mother stated that the medication makes him feel better, but "hypes him up a little bit."  Tr. at 44.  Charles takes the asthma medication before playing football or any other strenuous activity.

12.   Since first grade, Charles has been solely in special education classes.  He is, however, more advanced in some subject areas than in others, with language classes being more difficult for him.  Tr.at 45.  Charles told the ALJ that he has friends who are also classmates.  Tr. at 36.  He helps out with chores around the house, e.g., taking out the garbage, caring for his two dogs and helping his mother with the laundry and shopping.  Tr. at 46.

13. Plaintiff doesn't dispute the ALJ's finding that Charles' impairment does not meet or equal a listed impairment. Plaintiff urges, however, that Charles' ADD impairment is functionally equivalent to the listed impairment for organic mental disorders, listing § 112.02. See 20 C.F.R. § 416.926a(a). Specifically, plaintiff contends that the ALJ overlooked evidence of a marked impairment in Charles' cognitive / communicative function as well as deficiencies of concentration, persistence and pace resulting in frequent failure to complete tasks in a timely manner. For the reasons below, I find that plaintiff's allegations of error have merit.

14. The listed impairment for organic mental disorders may be met with "medically documented persistence" in at least one of ten categories in Part A (including both "impairments in cognitive functioning" and "disturbances in concentration, persistence and pace," the areas upon which plaintiff alleges error) *and* functional equivalence to the Part B requirements. § 112.02(A) 9 & 10; (B).[2]

15. On a standardized intelligence test, Charles tested out at a full-scale score of 90 (verbal 89; performance 94), which the ALJ noted showed no mental retardation. Tr. at 45. Another test for auditory short term memory (the "Woodcock-Johnson Psycho-Educational Battery - Vol I" test) showed that Charles functioned at one standard deviation from the norm, and not the *two* standard deviations required for a marked limitation to be established on the basis of a standardized test. Tr. at 107. However, medical findings about impairments may come not only from the usual medical sources or from standardized tests, but also from "parents or other individuals who have knowledge of the child." § 112.02(B)(2).

---

[2] The Part B requirements describe impairment-related functional limitations for children, to be used in conjunction with the regulations describing various areas of development in § 416.926a(c)(4) & (5).

16. One way in which an impairment that does not meet or equal a listed impairment would nevertheless be functionally equivalent in severity to a listed impairment, as part of a step three analysis, is if a claimant has "marked" limitations in two areas of the areas of development which are described in §§ 416.926a(c)(4) & (c)(5), or "extreme limitations" in one area. § 416.926a(c).[3]  For children from age 3 to 18, "marked" means "more than moderate" and "less than extreme." "Extreme limitation" for this age group means "no meaningful functioning in a given area." § 416.926a(c)(3).

17. The ALJ found that Charles' impairment was not the functional equivalent of a listed disability under the step three ("meet/equal") level of analysis, basing his conclusion on testimony given by Charles' mother and on the reports from Charles' first-grade teacher, Ms. Montalvo and from psychiatrist Dr. Samir Roy. Tr. at 17-18.

18. The ALJ found that there was "no evidence of limitation" in the following areas: cognitive / communicative; motor; social; personal / behavioral; concentration, persistence and pace. Tr. at 25. He noted that Charles' learning and behavior impairment was controlled with the Ritalin and Imipramine. Tr. at 34. His asthma was also controlled by medication, so that it was not limiting Charles in the motor domain. Id. The ALJ also made findings looking at the same areas of development for his step four inquiry involving an "individualized functional assessment," which I need not review here under the new standard. See Tr. at 19-25.

---

[3] Equivalence can be met in three other ways. § 416.926a(b)(1) through (b)(4). Here, I address only the specific basis for functional equivalence alleged by plaintiff to be erroneous, that related to broad areas of functioning. I also note that new regulations effective as of April 14, 1997 appear to eliminate functional equivalence based on broad areas of functioning, which track the requirements of Part B in § 200.02. 62 FR 6424, Feb. 11, 1997 (to be codified at § 416.926a).

19. I have reviewed the evidence in the record, including the reports upon which the ALJ specifically relied. The ALJ gave consideration to the fact that Charles' problems improved with medication. See Pacheco v. Sullivan, 931 F.2d 695, 698 (10th Cir. 1991); Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985) (impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability). However, I find that the ALJ's decision that Charles' impairment is not functionally equivalent to a listed impairment is not supported by substantial evidence, even while Charles was on medication.

20. For example, the ALJ's finding that Charles functioned in an "age-appropriate" manner is not supported by the reports of either Dr. Roy or Ms. Montalvo. Dr. Roy opined that Charles' hyperactivity, inattentiveness and aggressive behavior had "markedly calmed down" with the proper medication dosage, but that upon stimulus, plaintiff regressed to "baseline" behavior, even with medications on board. Tr. at 170. He also stated in his report that Charles' "fund of knowledge seems to be below the expectancy of his age level." Tr. at 171. Ms. Montalvo reported that even while on medication, Charles' skills "fall far below" grade level and that Charles was "always" underachieving. Tr. at 95-96.[4]

21. Ms. Montalvo reported that on medication, Charles had a "good attention span." Tr. at 95-96. However, in the same report, she evaluated Charles as "always" having difficulty completing tasks and being easily distracted on a daily basis. This information does not constitute sufficient evidence upon which to find that Charles has an "age-appropriate ability to sustain an

---

[4] "Always" was defined as "several times a day." "A problem much of the time" means "daily." Tr. at 96.

activity for a period of time and at a reasonable pace" under the category of concentration, persistence and pace. Tr. at 25; § 416.926a(c)(5)(iv)(E).

22.  In order to function at an age-appropriate level in the cognitive / communicative domain, an individual must, among other things, have the ability to "retain and recall information," to "[apply] acquired knowledge," to learn through verbal and nonverbal reasoning" and to "comprehend and produce language . . . using increasingly complex vocabulary and grammar." § 416.926a(c)(5)(iv)(A). However, Ms. Montalvo reported that Charles was "severely deficient in transfer and application skills." Tr. at 95. A November 1994 speech and language evaluation stated that Charles was "significantly below predicted achievement levels" in semantics/vocabulary, auditory comprehension/memory, sentence structure/grammar and verbal reasoning skills. Tr. at 101.

23.  The ALJ must weigh all the evidence in arriving at a determination about disability. 20 C.F.R. § 404.1527(c). It is possible to select certain portions from the pertinent reports in the record and find them supportive of the ALJ's conclusion. However, the Court cannot affirm the Commissioner's decision just by isolating a few facts and determining that they constitute substantial evidence. See Martin v. Schweiker, 562 F.Supp. 912, 917 (D.Kan. 1982). Viewing all the evidence in the record, I find that the ALJ's finding that Charles' impairment was not functionally equivalent to any listed impairment was not based on substantial evidence.

### Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [11-1] be granted in order to conduct a proper step three analysis with consideration given to those parts of

the reports partially discussed by the ALJ and which are relevant to a functional equivalence analysis at step three. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE